_____

**RECORD NO. 15-1419**

_____

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

_____

KOBE; MARK,

*Plaintiffs-Appellants,*

and

JOHN,

*Plaintiff,*

v.

NIKKI HALEY, in her official capacity as Governor and Chairman of the
South Carolina Budget and Control Board; CHRISTIAN SOURA, in his capacity
as the Director of the South Carolina Department of Health and Human Services;
ANTHONY KECK, in his capacity as the Director of the South Carolina
Department of Health and Human Services; BEVERLY BUSCEMI, in her official
capacity as Director of the South Carolina Department of Disabilities and Special
Needs; RICHARD HUNTRESS, in his capacity as Commissioner of the South
Carolina Department of Disabilities and Special Needs; KATHI LACY; THOMAS
P. WARING; JACOB CHOREY, in their capacities as employees of the South
Carolina Department of Disabilities and Special Needs; MARY LEITNER, in her
capacity as the Director of the Richland Lexington Disabilities and Special Needs
Board; JUDY JOHNSON, in her capacity as the Director of the Babcock Center;
DANIEL COOPER; CONVERSE A. CHELLIS, III, HUGH LEATHERMAN;
RICHARD ECKSTROM; CURTIS LOFTIS; BRIAN WHITE, in their capacities
as former members of the South Carolina Budget and Control Board; EMMA
FORKNER, in her capacity as the former Director of the South Carolina
Department of Health and Human Services; EUGENE A. LAURENT, former

Interim Director of the South Carolina Department of Disabilities and Special Needs; STANLEY BUTKUS, former Director of the South Carolina Department of Disabilities and Special Needs; UNNAMED ACTORS ASSOCIATED WITH THE BABCOCK CENTER; THE BABCOCK CENTER,

*Defendants-Appellees,*

and

CYNTHIA MANN, Deputy Administrator and Director of the Center for Medicaid, CHIP, and Survey & Certification, CMS; ELEANOR KITZMAN, in her official capacity as the Executive Director of the State Budget and Control Board; MCCONNELL F. GLENN, in his official capacity as the President Pro Tempore of the South Carolina Senate; ROBERT W. HARRELL, JR., in his official capacity as the Speaker of the South Carolina House of Representatives; MARK SANFORD, in his capacity as a former member of the South Carolina Budget and Control Board,

*Defendants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
_____

**PAGE-PROOF BRIEF OF APPELLEES**
_____

WILLIAM H. DAVIDSON, II
KENNETH P. WOODINGTON
DAVIDSON & LINDEMANN, P.A.
Post Office Box 8568
Columbia, South Carolina 29202
(803) 806-8222

*Counsel for Appellees Buscemi, Butkus, Chorey, Huntress, Lacy, Laurent & Waring*

VANCE J. BETTIS
GIGNILLIAT, SAVITZ & BETTIS, LLP
900 Elmwood Avenue, Suite 100
Columbia, South Carolina 29201
(803) 799-9311

*Counsel for Appellees Haley, Loftis & White*

DAMON C. WLODARCZYK
RILEY, POPE & LANEY, LLC
Post Office Box 11412
Columbia, South Carolina 29211
(803) 799-9993

*Counsel for Appellees Keck,
Forkner & Soura*

PATRICK J. FRAWLEY
DAVIS FRAWLEY, LLC
Post Office Box 489
Lexington, South Carolina 29071
(803) 359-2512

*Counsel for Appellee Leitner*

JOEL W. COLLINS, JR.
CHRISTIAN STEGMAIER
MEGHAN HAZELWOOD HALL
COLLINS & LACY, P.C.
Post Office Box 12487
Columbia, South Carolina 29211
(803) 256-2660

*Counsel for Appellees Babcock Center,
Unnamed Actors Associated with the
Babcock Center & Johnson*

ROBIN L. JACKSON
SENN LEGAL, LLC
Post Office Box 12279
Charleston, South Carolina 29422
(843) 556-4045

*Counsel for Appellees Chellis
& Cooper*

LESLIE A. COTTER, JR.
SHEILA M. BIAS
RICHARDSON, PLOWDEN
 & ROBINSON, P.A.
Post Office Drawer 7788
Columbia, South Carolina 29202
(803) 771-4400

*Counsel for Appellees Leatherman
& Eckstrom*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1419__    Caption: __Kobe et al v. Nikki Haley et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Anthoney Keck and Emma Forkner__
(name of party/amicus)

_____

 who is _____appellees_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                      ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                      ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: __s/Damon C. Wlodarczyk__          Date: ____4/24/2015____

Counsel for: __Anthoney Keck and Emma Forkner__

## CERTIFICATE OF SERVICE
**************************

I certify that on ____8/7/2014____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

__s/Damon C. Wlodarczyk__          ____4/24/2015____
(signature)                                      (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. <u>15-1419</u>         Caption: <u>Kobe, et al. v. Nikki Haley, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Nikki Haley, Curtis Loftis, and Brian White</u>
(name of party/amicus)

_____

 who is _____appellees_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.     Does party/amicus have any parent corporations?                            ☐YES ☑NO
       If yes, identify all parent corporations, including grandparent and great-grandparent
       corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?                                               ☐YES ☑NO
       If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ Vance J. Bettis        Date: April 24, 2015

Counsel for: Nikki Haley/Curtis Loftis/Brian White

## CERTIFICATE OF SERVICE
***************************

I certify that on    April 24, 2015    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/ Vance J. Bettis                        April 24, 2015
(signature)                                   (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _15-1419_      Caption: _Kobe, Mark & John v. Nikki Haley et al_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_The Babcock Center, Judy Johnson, in her capacity as the Director of the Babcock Center & unnamed_
(name of party/amicus)

_actors associated with the Babcock Center_

who is _____ Respondents _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                          ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent
     corporations:
     Not applicable.

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
     other publicly held entity?                                             ☐ YES ☑ NO
     If yes, identify all such owners:
     None.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:
    None.

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:
    None.

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:
    None.

Signature: s/Christian Stegmaier, (Fed. ID 8007)          Date: ___ April 27, 2015 ___

Counsel for: Respondents _____

## CERTIFICATE OF SERVICE
************************

I certify that on ___ April 27, 2015 ___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Patricia L. Harrison, Esquire
611 Holly Street
Columbia, SC 29205
Attorneys for Plaintiff

___ s/Christian Stegmaer ___                    ___ April 27, 2015 ___
        (signature)                                       (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _15-1419_    Caption: _Kobe v. Nikki Haley, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Beverly Buscemi_
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ Kenneth P. Woodington                    Date: April 27, 2015

Counsel for: Beverly Buscemi

## CERTIFICATE OF SERVICE
**************************

I certify that on    April 27, 2015    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/ Kenneth P. Woodington                         April 27, 2015
(signature)                                          (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1419__        Caption: __Kobe v. Nikki Haley, et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Stanley Butkus_____
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                            ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                   ☐YES ☑NO
        If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: __s/ Kenneth P. Woodington_____     Date: ____April 27, 2015____

Counsel for: __Stanley Butkus_____

## CERTIFICATE OF SERVICE
**************************

I certify that on ____April 27, 2015____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

__s/ Kenneth P. Woodington____                    ____April 27, 2015____
(signature)                                                    (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1419__      Caption: __Kobe v. Nikki Haley, et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Jacob Chorey_____
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                          ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐ YES ☑ NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐ YES ☑ NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)     ☐ YES ☑ NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?     ☐ YES ☑ NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ Kenneth P. Woodington          Date:    April 27, 2015

Counsel for: Jacob Chorey

## CERTIFICATE OF SERVICE
**************************

I certify that on    April 27, 2015    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/ Kenneth P. Woodington                              April 27, 2015
            (signature)                                        (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1419__     Caption: __Kobe v. Nikki Haley, et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Richard Huntress_____
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature:  s/ Kenneth P. Woodington                    Date:    April 27, 2015

Counsel for:  Richard Huntress

## CERTIFICATE OF SERVICE
**************************

I certify that on _____April 27, 2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

 s/ Kenneth P. Woodington                              April 27, 2015
         (signature)                                        (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1419__        Caption: __Kobe v. Nikki Haley, et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Kathi Lacy_____
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                ☐YES ☑NO
      If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ Kenneth P. Woodington          Date: April 27, 2015

Counsel for: Kathi Lacy

## CERTIFICATE OF SERVICE
**************************

I certify that on _____April 27, 2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/ Kenneth P. Woodington                    April 27, 2015
(signature)                                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. <u>15-1419</u>        Caption: <u>Kobe v. Nikki Haley, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Eugene A. Laurent</u>
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ Kenneth P. Woodington                    Date:    April 27, 2015

Counsel for: Eugene A. Laurent

# CERTIFICATE OF SERVICE
**************************

I certify that on    April 27, 2015    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/ Kenneth P. Woodington                          April 27, 2015
(signature)                                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. 15-1419         Caption: Kobe v. Nikki Haley, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Thomas P. Waring
(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                        ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐ YES ☑ NO
        If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature:  s/ Kenneth P. Woodington          Date:    April 27, 2015

Counsel for:  Thomas P. Waring

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on    April 27, 2015    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

  s/ Kenneth P. Woodington                          April 27, 2015
        (signature)                                           (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. 15-1419          Caption: Kobe, Mark and John v. Nikki Haley et al

Pursuant to FRAP 26.1 and Local Rule 26.1,

Converse Chellis
(name of party/amicus)


who is _____Respondent_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _S/ Sandra J. Senn_____    Date: ____April 27, 2015_____

Counsel for: _Converse Chellis_____

## CERTIFICATE OF SERVICE
**************************

I certify that on ____April 27, 2015____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Patricia L. Harrison, Esquire
611 Holly Street
Columbia, SC 29205

_S/ Sandra J. Senn_____            ____April 27, 2015____
(signature)                                                      (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1419__    Caption: __Kobe, Mark and John v. Nikki Haley et al_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Daniel Cooper_____
(name of party/amicus)

_____

 who is _____Respondent_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                              ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐YES ☑NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: __S/ Robin L. Jackson_____    Date: ____April 28, 2015____

Counsel for: __Daniel Cooper_____

## CERTIFICATE OF SERVICE
**************************

I certify that on ____April 27, 2015____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Patricia L. Harrison, Esquire
611 Holly Street
Columbia, SC 29205

__S/ Robin L. Jackson_____    ____April 27, 2015____
(signature)                              (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1419__    Caption: __Kobe; Mark and John v Nikki Haley...Mary Leitner, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Mary Leitner, i her capacity as the Director of the Richkland Lexington Disabilities and Special Needs__
(name of party/amicus)

__Board__

 who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                        ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                               ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/Patrick J. Frawley                Date:    4/28/2015

Counsel for: Mary Leitner

**CERTIFICATE OF SERVICE**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on    4/28/2015    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/Patrick J. Frawley                    4/28/2015
(signature)                        (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1419__     Caption: __Kobe, et al. v. Nikki Haley, et. al_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Richard Eckstrom, Hugh Leatherman_____
(name of party/amicus)

_____

who is _____appellees_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                      ☐ YES ☑ NO
      If yes, identify all such owners:



10/28/2013 SCC                          - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: s/ Leslie A. Cotter, Jr.                     Date:    April 29, 2015

Counsel for: Richard Eckstrom, Hugh Leatherman

## CERTIFICATE OF SERVICE
***************************

I certify that on ____April 29, 2015____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

s/ Leslie A. Cotter, Jr.                                April 29, 2015
        (signature)                                          (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-1419__      Caption: __Kobe et al v. Nikki Haley et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Christian Soura__
(name of party/amicus)

_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                             ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                        ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _s/Damon C. Wlodarczyk_____    Date: _____6/8/2015_____

Counsel for: _Christian Soura_____

# CERTIFICATE OF SERVICE
**************************

I certify that on _____6/8/2015_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_s/Damon C. Wlodarczyk_____                     _____6/8/2015_____
        (signature)                                        (date)

# TABLE OF CONTENTS

Table of Authorities ............................................................................... iii

Counterstatement of Issues Presented for Review.....................................................1

Jurisdictional Statement ...........................................................................2

Counterstatement of the Case ........................................................................2

Summary of Argument .................................................................................17

Standard of Review...................................................................................19

Argument............................................................................................20

    1.    The district court correctly ruled that Plaintiffs' claims pertaining to ADHC services were moot. ...........................................20

    2.    The district court correctly ruled that Plaintiffs' claims pertaining to Kobe's ACD and wheelchair were moot. .....................22

    3.    The district court correctly concluded that Plaintiff Kobe's claims regarding a supervised apartment were not ripe.....................23

    4.    The district court correctly concluded that Plaintiff Mark's claims regarding additional respite care were not ripe. .....................27

    5.    Plaintiff has not challenged on appeal the district court's conclusions regarding lack of standing ................................28

    6.    Plaintiff Kobe's "retaliation" claims are only vaguely and cursorily argued, and are without legal or factual merit in any event. ...............................................................29

7.    The district court properly dismissed all claims against the BCB members because the official capacity claims are barred by the Eleventh Amendment and do not fit the *Ex parte Young* exception and because the individual capacity claims are barred by the doctrine of legislative immunity and fail as a matter of law for other reasons as well. ...........................................................31

a.    The official capacity claims are barred by the Eleventh Amendment and, as to BCB members Chellis and Cooper, were properly dismissed for the additional reason that they left office in 2011. ...........................................33

b.    The individual capacity claims against the BCB members were properly dismissed as barred by the doctrine of legislative immunity. Dismissal was also proper because none of the BCB members is a public entity under the ADA; the § 1983 claims fail to state a factually plausible claim for relief against any BCB member; and there is no right of action for damages under the Supremacy Clause.. ......45

(1)    Legislative immunity bars the individual capacity claims. ..........................................................45

(2)    The BCB members are not subject to individual liability under the ADA or Rehabilitation Act. ..............48

(3)    The purported § 1983 claims do not allege a factually plausible claim against any BCB member individually. ..................................................50

(4)    There is no private right of action for damages under Supremacy Clause. ...............................51

Conclusion ........................................................................52

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

## *Cases*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................19, 51

*Baird v. Rose*,
    192 F.3d 462 (4th Cir. 1999) .......................................................49

*Board of Trustees of Univ. of Ala. v. Garrett*,
    531 U.S. 356 (2001)...................................................................34

*Bogan v. Scott-Harris*,
    523 U.S. 44 (1998)................................................................45, 46, 47, 48

*Calderon v. Moore*,
    518 U.S. 149 (1996) ...................................................................22

*Constantine v. Rector and Visitors of George Mason Univ.*,
    411 F.3d 474 (4th Cir. 2005) ...................................................36, 37

*D.G. ex rel. Stricklin v. Henry*,
    591 F. Supp. 2d 1186 (N.D. Ok. 2008) .......................................41

*Debauche v. Trani*,
    191 F.3d 499 (4th Cir. 1998) .......................................................37

*Doe v. Kidd*,
    501 F.3d 348 (4th Cir. 2007) .......................................................20

*Duckworth v. State Admin. Bd. of Election Laws*,
    332 F.3d 769 (4th Cir.2003) .......................................................20

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir.1999) .......................................................30

*Elezovic v. England*,
    200 F. Appx. 193 (4th Cir. 2006) ...............................................30

*Ex parte Young*,
    209 U.S. 123 (1908)..................................................................*passim*

*Fitzgerald v. Barnstable Sch. Ctee.*,
    555 U.S. 246 (2009) ............................................................................50

*Freilich v. Upper Chesapeake Health, Inc.*,
    313 F.3d 205 (4th Cir. 2002) ...........................................................30

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)...................................................................29, 28

*Golden State Transit v. City of Los Angeles*,
    493 U.S. 103 (1989) ..........................................................................51

*Guttman v. Khalsa*,
    669 F.3d 1101 (10th Cir. 2012) .......................................................36

*Hutto v. South Carolina Ret. System*,
    773 F.3d 536 (4th Cir. 2014) .......................................34, 39, 40, 43

*Kensington Vol. Fire Dep't, Inc. v. Montgomery Co.*,
    684 F.3d 462 (4th Cir. 2012) ...........................................................45

*Koenig v. Maryland*,
    2015 WL 736575 (D. Md. 2015)......................................................49

*Kuck v. Danaher*,
    822 F. Supp. 2d 109 (D. Conn. 2011) .............................................41

*Lenscrafters, Inc. v. Sundquist*,
    184 F. Supp.2d 753 (M.D. Tenn. 2002) ..........................................41

*Levin v. S. Carolina Dep't of Health & Human Servs.*,
    2015 WL 1186370 (D.S.C. Mar. 16, 2015)......................................26

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..........................................................................28

*McBurney v. Cuccinelli*,
    616 F.3d 393 (4th Cir. 2010) ..............................................................35, 38, 39

*McCoy v. Conroy*,
    2015 WL 1085129 (D. Md. 2015)........................................................50

*McGhee v. Director, Dept. of Mental Health & Hygiene*,
    153 F.3d 721 (4th Cir. 1998) ...........................................................26

*Miller v. Miller*,
    375 S.C. 443, 652 S.E.2d 754 (S.C. Ct. App. 2007) ....................................22

*Mills v. Green*,
    159 U.S. 651 (1895).......................................................................23

*Oliva v. State of Maryland*,
    2003 WL 24026308 (D. Md. 2003)...............................................44

*Pashby v. Delia*,
    709 F.3d 307 (4th Cir. 2013) ........................................................23

*Peter B. v. Sanford*,
    2010 WL 568397 (D.S.C. 2010).......................................................37, 41, 50

*Production & Leasing Ltd. v. Hotel Conquistador, Inc.*,
    709 F.2d 21 (9th Cir. 1983) ............................................................44

*Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993)........................................................................43

*Rendelman v. Rouse*,
    569 F.3d 182 (4th Cir. 2009) ........................................................50

*Scott v. Lacy*,
    811 F.2d 1153 (7th Cir. 1987) .......................................................38

*Scott v. United States*,
    328 F.3d 132 (4th Cir. 2003) ........................................................20

*Sweatt v. Hull*,
    200 F. Supp. 2d 1162 (D. Ariz. 2001) ....................................................41, 42

*Tennessee v. Lane*,
    541 U.S. 509 (2004)...................................................................................35

*U.S. v. South Carolina*,
    720 F.3d 518 (4th Cir. 2013) ...................................................................52

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
    252 F.3d 316 (4th Cir. 2001) ...........................................................38, 41, 42

*Webster v. U.S. Dept. of Agriculture*,
    685 F.3d 411 (4th Cir. 2012) ....................................................................20

*Will v. Michigan Dep't of State Police*,
    491 U.S. 58 (1989)....................................................................................35

*Williams v. Giant Food Inc.*,
    370 F.3d 423(4th Cir. 2004) ......................................................................4

## **_Statutes_**

S.C. Code Ann. § 15-78-20(e) ................................................................44

S.C. Code Ann. § 30-4-80.......................................................................47

S.C. Code Ann. § 44-20-1170...................................................................47

Fed. R. Civ. P. 25(d) ...........................................................................38

Fed. R. App. P. 28(a)(9)................................................................4, 29, 30

20 U.S.C. § 7801 ................................................................................49

28 U.S.C. § 1291 ..................................................................................2

28 U.S.C. § 1331 ..................................................................................2

29 U.S.C. § 794(a) ...................................................................23, 49

29 U.S.C. § 794(b) ............................................................................50

42 U.S.C. § 1983 ........................................................................ *passim*

42 U.S.C. § 1985(3) .....................................................................5, 31

42 U.S.C. § 1988 ..................................................................................5

42 U.S.C. § 12131(1) .......................................................................49

42 U.S.C. § 12132..............................................................................48

42 U.S.C. § 12203..............................................................................30

Supremacy Clause of the United States Constitution ...................... *passim*

U.S. Const., amend. XI. .................................................................34

U.S. Const., amend. XIV, § 5 ......................................................35

Title VI of the Civil Rights Act of 1964 ....................................50

Racketeer Influenced and Corrupt Organizations Act............................5, 31, 43, 44

Title IX of the Education Amendments of 1972......................................50

Rehabilitation Act ...................................................................... *passim*

Section 504 of the Rehabilitation Act....................................................23

Americans With Disabilities Act .................................................. *passim*

Title II of the ADA........................................................................ *passim*

## COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the district court correctly ruled that Plaintiffs' claims pertaining to ADHC services were moot.

2.    Whether the district court correctly ruled that Kobe's claims pertaining to a speech device and a wheelchair were moot.

3.    Whether the district court correctly concluded that Plaintiff Kobe's claims regarding a supervised apartment were not ripe.

4.    Whether the district court correctly concluded that Plaintiff Mark's claims regarding additional respite care were not ripe.

5.    Whether Plaintiffs have failed to challenge on appeal the district court's conclusions regarding lack of standing, which conclusions were correct in any event.

6.    Whether Plaintiff's "retaliation" claims are only vaguely and cursorily argued, and are without merit in any event.

7.    Whether the district court properly dismissed all claims against the BCB members because the official capacity claims are barred by the Eleventh Amendment and do not fit the *Ex parte Young* exception and because the individual capacity claims are barred by the doctrine of legislative immunity and fail as a matter of law for other reasons as well.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1331. This is a timely appeal from a final order. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1291.

## COUNTERSTATEMENT OF THE CASE

This action was filed on May 11, 2011. There were originally three Plaintiffs, one of whom ("John") was voluntarily dismissed on July 23, 2013. ECF No. 215. The primary practical relief sought by the two remaining Plaintiffs, Kobe and Mark, was an order requiring that they continue to receive Adult Day Health Care ("ADHC") services.[1] That relief was obtained for Mark in 2011, not through the present action, but because the South Carolina Department of Health and Human Services (DHHS) decided in the latter part of 2011 to make a general change to eligibility criteria for ADHC services, which conformed to a similar change made by DHHS in another context in 2009. (Kobe had been already been

---

[1] The Amended Complaint also asserted that Plaintiff, Kobe was entitled to a federal order requiring some of the Defendants to provide him with an augmentative communicative device (ACD), as well as a placement in an apartment and a repaired or new wheelchair. ECF No. 65, ¶¶ 280, 306, 338-39, 341, 342. Requests for most or all of that relief, if made to county or state agencies at all, were not made until after this action was filed.

There has also been a claim that Plaintiff Mark's respite care hours should have been restored to a previous level, Amended Complaint ¶ 75, but as will be shown, that claim was barely addressed in the district court by Plaintiffs' counsel, and the need for the claimed hours was never proven.

determined by DDSN's Director to continue to qualify for the services even before the 2011 change to the eligibility criteria.)

The Amended Complaint consisted of 72 pages, with over 400 paragraphs and eight causes of action. A total of nineteen Defendants were named in the Amended Complaint. Broadly speaking, the Defendants fall within one of two groups: certain past or present members of the Budget and Control Board, including the Governor of South Carolina ("BCB Defendants") or those associated with health care agencies or entities ("health-related Defendants"). The health-related Defendants, so called in order to distinguish them from the BCB Defendants, are past or present officials or employees of certain governmental agencies, as well as employees of one private entity, the Babcock Center. The various Defendants fall within the following groups:

a.    Directors of the South Carolina Department of Health and Human Services (DHHS)(Forkner and Keck).

b.    Directors and other officials of the South Carolina Department of Disabilities and Special Needs (DDSN)(Buscemi, Laurent, Butkus, Lacy, Huntress, Waring and Chorey).

c.    Mary Leitner, the Director of the Richland Lexington Disabilities and Special Needs Board (Rich/Lex).

d.    Judy Johnson, Director of the Babcock Center, and other unnamed actors associated with the Babcock Center. [2]

e.    The Governor and other members of the South Carolina Budget and Control Board ("BCB").[3]

---

[2] As outlined herein, a review of Plaintiffs' argument in their briefing to this Court reveals abandonment by Plaintiffs of much that had been alleged in their pleadings. As a corollary, there is an almost complete absence of any direct reference to or argument directed at the Babcock Center defendants. Accordingly, despite expending the effort in the factual scenario to attempt to run down the Babcock Center Defendants in the eyes of this panel with inaccurate, misleading, overbroad, and irrelevant averments and assertions, the Babcock Center Defendants maintain that Plaintiffs' abandonment of issues raised at the district court and absence of argument on appeal related to the Babcock Center Defendants constitutes the basis for affirming the grant of summary judgment as to these defendants. *See Williams v. Giant Food Inc.,* 370 F.3d 423, 430 n. 4 (4th Cir. 2004) (citing Fed. R. App. P. 28(a)(9)). Further Plaintiffs' arguments on appeal center on funding with regard to access to services. The Babcock Center Defendants are service providers and have nothing to do with appropriations or funding for services sought by Plaintiffs.

[3] These Defendants included Governor Nikki Haley, who in January 2011 assumed office as Governor of South Carolina and Chairman of the South Carolina Budget and Control Board ("BCB"); former Governor Mark Sanford, who left office as Governor and Chairman of the BCB in 2011; former State Representative Daniel Cooper, who served as a member of the BCB by virtue of his position as Chairman of the Ways and Means Committee of the South Carolina House of Representatives until January 2011; former State Treasurer Converse Chellis, who served as a member of the BCB by virtue of his office as State Treasurer until January 2011; State Senator Hugh Leatherman, who served as a member of the BCB by virtue of his position as Chairman of the Finance Committee of the South Carolina Senate until the BCB was abolished in 2014; State Comptroller General Richard Eckstrom, who served on the BCB by virtue of his office as Comptroller General until the BCB was abolished in 2014; and State Treasurer Curtis Loftis, who succeeded Converse Chellis as State Treasurer in 2011, and Representative Brian White, who succeeded Daniel Cooper as Chairman of the House Ways and Means Committee in 2011, both of whom served as members of the BCB from

The Amended Complaint, ECF No. 65, set forth a total of eight causes of action were as follows, listed by their respective count number:

1.    Violation of the Americans With Disabilities Act.

2.    Violation of Section 504 of the Rehabilitation Act.

3.    Violation of 42 U.S.C. § 1983.

4.    Violation of 42 U.S.C. §§ 1983 and 1988 (violation of civil rights).

5.    Violation of 42 U.S.C. § 1985(3) (conspiracy).

6.    Violation of the Supremacy Clause.

7.    Violation of RICO.

8.    State law claims by Plaintiff Kobe against the Babcock Center, a private entity that provides services to persons with disabilities.[4]

The Amended Complaint contained class action allegations, but those allegations were later abandoned: as the district court noted, "Plaintiffs sought no class certification and have confirmed to the court that the within action is brought by Plaintiffs on behalf of themselves, and not on behalf of others similarly situated." ECF No. 296 at 3-4.

The Amended Complaint also sought damages, *see, e.g.,* ECF No. 65 at 72, ¶ 9, but in their summary judgment filings in the district court, Plaintiffs made no

_____

January 2011 until its abolition in 2014. These defendants collectively are sometimes referred to hereafter as "the BCB members" or "the BCB defendants."

[4] This claim was settled and was dismissed on by Consent Order. ECF No. 359.

mention of a damage claim against any defendant other than the Babcock Center Defendants.[5] *See also,* ECF No. 317, 9/23/14 Tr. 43-44 (no mention of damages by Plaintiff's counsel). The Brief of Appellants in this Court is likewise devoid of any reference to a claim for damages.

Dispositive motions were filed by each set of Defendants, and resolved, as follows: Governor Haley filed a motion to dismiss the Amended Complaint on November 1, 2011 (ECF no. 75), asserting that the purported claims against her were barred by the Eleventh Amendment and the principles of *Ex parte Young*, 209 U.S. 123 (1908); failed for lack of a case or controversy because Plaintiffs' alleged injuries were not fairly traceable to Governor Haley; and were not legally viable. (*Id.*, p. 2). Treasurer Loftis and Representative White filed a motion to dismiss on December 30, 2011, relying on the same grounds as Governor Haley. (ECF no. 99). Former Treasurer Chellis and former Representative Cooper did likewise on March 19, 2012 and April 9, 2012, respectively. (ECF nos. 123 and 125). In addition to the grounds argued by Governor Haley, former Treasurer Chellis and former Representative White asserted that legislative immunity barred any individual capacity claims against them. (*Id.*).

---

[5]  Regarding the Babcock Center defendants, Plaintiff's damages averments pertained to Kobe's alleged personal injury claims, which were articulated in Count 8.  As stated in footnote 4, *supra*, these claims have since been settled and dismissed.

In an Order filed August 1, 2012, the district court granted these BCB members' motions and dismissed them as parties to this action. (ECF no. 135). The court held that the official capacity claims were barred by the Eleventh Amendment and not within the *Ex parte Young* exception; that the individual capacity claims against Chellis and Cooper were barred by legislative immunity; and that it was unnecessary to address the other grounds advanced in support of the motions to dismiss. (ECF no. 135, pp. 7-19).

On December 21, 2012, BCB members Leatherman and Eckstrom filed their motion to dismiss or, in the alternative, for summary judgment on the same grounds advanced by former BCB members Chellis and Cooper. (ECF no. 150). The district court granted Leatherman's and Eckstrom's motion in an Order filed August 12, 2013 (ECF no. 217), holding that Plaintiffs' claims against Leatherman and Eckstrom (1) were barred by the Eleventh Amendment and did not fall within the *Ex parte Young* exception insofar as these BCB members were sued in their official capacities and (2) were barred by the doctrine of legislative immunity insofar as they were sued individually. (*Id.*, pp. 6-11).

Also in December 2012, the Defendants other than the BCB Defendants, as well as Plaintiffs, filed cross motions for summary judgment. On August 12, 2013, the same day that the district court dismissed the remaining BCB Defendants (Leatherman and Eckstrom), the district court in a separate order denied without

prejudice those summary judgment motions in order to permit Defendants to engage in discovery with respect to certain witnesses belatedly identified by Plaintiffs. ECF No. 219. On January 6, 2014, after that discovery had been completed, cross motions for summary judgment were again filed by the remaining parties, that is, the health-related Defendants, the Babcock Center Defendants, and the Plaintiffs. J.A. __ (ECF Nos. 236, 237, 238); ECF Nos. 239, 240. The district court heard argument on all pending motions on September 23, 2014. *See* ECF No. 295.

On September 30, 2014, the district court granted summary judgment on all claims against all remaining Defendants except for the state law personal injury (Count 8) claims against the Babcock Center Defendants, and denied Plaintiffs' summary judgment motion. ECF No. 296.[6] The order was based on three grounds:

> (1)     Mootness with reference to the ADHC claims and the claimed need for a new wheelchair [pp. 10-11];[7]

> (2)     Lack of ripeness with respect to Mark's claimed need for additional hours of respite care [pp. 11-12][8] and

---

[6] As previously noted, those personal injury claims were settled and then dismissed. ECF No. 359.

[7] The court also concluded that "Kobe's ACD device was not installed on his wheelchair at the time of the hearing and thus is not accessible to him. The court ordered that the ACD device be properly affixed to Kobe's wheelchair no later than ten (10) days from the date of entry of this order." ECF No. 296 at 14. No issue remains with regard to whether this was done.

(3)    Lack of standing to obtain injunctive relief on any other issue

[pp. 12-13].

On October 28, 2014, Plaintiffs filed a Motion to Alter or Amend the district court's September 30, 2014 order. The court denied the motion by order dated May 7, 2015. ECF No. 364. In the course of denying Plaintiffs' motion, the district court added the conclusion that Plaintiff Kobe's claim of a need for an SLP apartment placement was not ripe for adjudication, because "[t]here is no evidence regarding if or when the request was forwarded to the Department of Disabilities and Special Needs (DDSN), or whether DDSN has rendered an unfavorable administrative decision or failed to respond to Kobe's request." ECF No. 364 at 4.

## FACTS

### A.    Adult Day Health Care (ADHC) services.

As noted above, this action was brought primarily as a challenge to proposed reductions in the services known as Adult Day Health Care (ADHC) services. Those proposed reductions were made under a state Medicaid policy that was subsequently revised by DHHS in a way that eliminated the specific eligibility test that had led to the review of the ADHC eligibility of Kobe, Mark and a number of other individuals whose qualifications were reviewed in the first part of 2011.

---

[8] As noted below, the district court subsequently held that the claim regarding a supervised apartment was also not ripe.

Under the prior policy regarding eligibility for ADHC services, which was in effect until September 1, 2011, the MR/RD[9] Medicaid Waiver program in South Carolina provided that in order to qualify for ADHC services, a person was required to have either (a) a "medically complex condition" or (b) a need for "extensive assistance with functional activities or tasks." ECF No. 237-3 at 2.

In late 2010 and early 2011, DDSN officials noticed that in several counties, local service coordinators were approving ADHC services for a greater proportion of individuals than was the norm elsewhere. ECF No. 237-2 at 3, ¶ 4. This resulted in DDSN inquiring into whether there were individuals in those counties who might not actually satisfy the requirement of having a medically complex condition or a need for extensive assistance with functional activities or tasks. *Id.* As a result, DDSN requested that the service coordinators in those counties reassess certain individuals to see whether they actually met those criteria. *Id.* Par. 5.

A number of reassessments were conducted by the service coordinators. With respect to the two remaining Plaintiffs, Kobe and Mark, the initial decision by the respective service coordinators was that neither of those individuals were qualified to continue to receive ADHC services. Both Plaintiffs appealed those

---

[9] Appellees, like the district court, will use the "MR/RD" terminology which was in effect at the time this case was filed, as opposed to the current term "ID/RD." ECF No. 135 at 3 n.4.

decisions to Dr. Buscemi, the Director of DDSN. *See* ECF No. 237-2 at 3, 4, Paragraphs 8 and 10.

Dr. Buscemi concluded, in letters dated May 6, 2011 and May 11, 2011, that the ADHC reduction should be reversed with regard to Kobe, but affirmed with regard to Mark. ECF Nos. 237-5, 237-7. (In other words, Kobe's ADHC services would not be discontinued.) These decisions were made on the basis of whether or not the particular individual was found by Dr. Buscemi to have a medically complex condition or a need for extensive assistance with functional activities or tasks.

Both Plaintiffs were advised by their service coordinator that the ADHC services proposed for termination would remain in effect during the reconsideration by Dr. Buscemi, and, if necessary, during the DHHS appeal process. ECF Nos. 152-7, 152-8, 178-1. Dr. Buscemi's May 6, 2011, letter in turn advised Mark's representative that if Mark were to appeal to DHHS, the services would remain in effect during the pendency of any such appeal. ECF No. 237-7. With respect to Kobe, Dr. Buscemi's May 11, 2011, letter noted that the original ADHC service authorization would continue unchanged, in light of Dr. Buscemi's having determined that Kobe was eligible for those services. ECF No. 237-5.

By letters dated June 7 and June 8, 2011 to the DHHS Division of Appeals and Hearings, Plaintiff's counsel initiated administrative appeals for the three

original Plaintiffs in this case, Kobe, Mark and John. Dr. Buscemi had upheld the termination of services for Mark, as noted above.[10] The appeal letter for Mark advised that "We are appealing the proposed termination of adult day health care services for [Mark]. . . . A copy of the denial of reconsideration signed by Dr. Buscemi is attached." ECF No. 237-8. In the case of Kobe, the June 8, 2011, letter likewise advised that "We are appealing the proposed termination of adult day health care services for [Kobe]." ECF No. 237-13. However, there was no reference to a "copy of the denial of reconsideration signed by Dr. Buscemi," no doubt because in fact, as noted above, reconsideration was granted by Dr. Buscemi, not denied. All told, there is no apparent reason why an appeal was even filed on behalf of Kobe, given that the proposed reduction of his services was reversed by Dr. Buscemi, the Director of DDSN.

On November 7, 2011, DHHS, which directs the actions of DDSN in connection with the MR/RD Waiver, advised Dr. Buscemi that

> The State will no longer limit access to ADHC services to [ID/RD] waiver participants with medically complex conditions, or to those participants who require extensive assistance with functional activities/tasks.

ECF No. 237-9 at 2. The DHHS letter to Dr. Buscemi noted that the "medically complex" criteria had previously been eliminated in July 2009 from another

---

[10] Dr. Buscemi also upheld the termination of services for John, who was dismissed from the present federal case on July 23, 2013. ECF No. 215.

Medicaid Waiver program, the Community Supports waiver. *Id.* The letter further noted that those criteria had been "unnecessarily restrictive to participants accessing the services," and that since the criteria were eliminated from that other waiver, they were also not necessary for the MR/RD Waiver. *Id.* The policy set forth in the attachment to the November 7, 2011, DHHS letter is binding on the DDSN Defendants. ECF No. 237-3, Par. 14, and ECF No. 237-10.

The administrative appeals of Kobe and Mark were set to be heard on October 13, 2011 by a DHHS Hearing Officer, but the cases were settled by separate Consent Orders. ECF Nos. 237-11, 237-12. DHHS agreed in those Consent Orders that each individual "meets criteria for and is appropriate for Adult Day Health Care." [Both Orders at p. 3] This was only to be expected, since Dr. Buscemi had already so held with respect to Kobe, and as for Mark, DHHS was on the verge of adopting the policy change attached to the November 7, 2011, letter. ECF No. 237-9. pp. 2 and 3. In other words, by then, Kobe had already been found by DDSN to meet the "old" criteria for ADHC, and for Mark, the  forthcoming changes to the general eligibility criteria meant that he and all others receiving ADHC services would also continue to qualify for ADHC without a need to show medical necessity in order to receive those services.

**B.    Kobe's claims regarding Durable Medical Equipment (DME)(augmentative communication device and new or repaired wheelchair)**

On or about November 11, 2011, DHHS received a Prior Authorization request seeking an augmentative communication device (ACD) for Kobe. ECF No. 236-3. DHHS responded to the ACD request on November 14, 2011, four days after the request for the device was made. ECF No. 236-3. The response indicated that the request could not be processed because the medical director determined that Kobe was not involved in educational endeavors, but instead needed to communicate to express health and well-being needs, comfort and discomfort and conduct normal speech. Accordingly, the medical director determined that an ACD with pre-recorded messages, as opposed to an ACD which synthesized speech, would provide him with adequate speech support. ECF No. 236-3.

Several weeks thereafter, on or about November 28, 2011, Lynn Lugo (Kobe's Service Coordinator with RichLex) conducted a Six-Month Plan Review for Kobe at the Hope Bridge facility in Cayce. That meeting was attended by Kobe and his attorney. *See*, Affidavit of Lynn Lugo, January 2, 2014 (hereinafter "Lugo Affidavit II"), ECF 238-2, ¶2. At the conclusion of the meeting, Ms. Lugo offered to assist Kobe's attorney in gathering information for the appeal of the denial of Kobe's ACD application, but that offer was rebuffed when the attorney told her Kobe would not be appealing through the state administrative process because the

14

attorney felt they would get a quicker result by just adding the denial of the application for the communication device to their Federal Court lawsuit.  *Id*., ¶¶2-4.  During the summer of 2013, in part through the efforts of that same RichLex Service Coordinator, a Tobii C-15 Eye Gaze Assistive Technology communication device was obtained for Kobe.  *Id*., ¶5.  Notwithstanding Kobe's attorney's repeated mischaracterization of the speech device as a "loaner," there is no dispute that it is Kobe's to keep so long as he continues to use it.  *Id*., ¶5; *See also*, Lynn Lugo Affidavit, October 28, 2014 (hereinafter "Lugo Affidavit III"), ECF 308-1, ¶5.

Regarding Kobe's alleged request for a replacement wheelchair, there was no record of a request for a wheelchair having been made to DHHS.  ECF No. 236-4.

**C.    Kobe's claims regarding a supervised apartment.**

The Amended Complaint alleged that Kobe "would like to move from the group home where he lives into an apartment," ECF No. 65 at 12, ¶ 38, but there is no evidence that this desire ever reached the point of the submission of a specific proposal either to the Service Coordinator or to DDSN either at the time of the Amended Complaint or at any time thereafter. On appeal, Plaintiff Kobe asserts that "An email from Kobe's service coordinator confirms his request to live in an apartment setting in 2012," that is, well after the filing of the Amended Complaint,

ECF No. 65, on October 18, 2011. Br. of Appellant at 19. In that 2012 e-mail, ECF No. 279-2 at 2-4, the RichLex Service Coordinator, Lynn Lugo (a non-defendant) merely provided to Plaintiff's counsel and certain others the SLP assessment which Ms. Lugo had prepared. Ms. Lugo also voiced her understanding that "UCP [United Cerebral Palsy, a private service provider] will now take this as the first step in requesting outlier funding." *See*, ECF 279-2, p. 2. (In a second exchange not cited by Kobe on appeal, occurring on December 17, 2013, Ms. Lugo commented that "UCP is in the process of preparing a budget that will encompass all needed supports for [Kobe] to live in an apartment setting. Once this is completed, this will be sent to DDSN by UCP for approval of funds." ECF 279-8, p. 31. Ms. Lugo closed by noting that she had "checked with UCP yesterday and the budget has not yet been completed, but is in process." *Id*. The evidence cited by Kobe indicated that the SLP assessment prepared by his RichLex Service Coordinator had been forwarded on to UCP, but that until the UCP budget was completed, the application for approval of funds by DDSN was not going to go forward.[11] There was no evidence that such subsequent events ever occurred.

---

[11] On appeal, Plaintiff Kobe also cites two affidavits by him, ECF No. 290-1 at 2; ECF No. 309-1 at 3, concerning his alleged request for a supervised apartment placement, Br. of Appellants at 19, but neither of those affidavits is accompanied by any documentation showing that such a request was actually made. The Brief of Appellants also asserts that "Defendants would not provide funding to allow [Kobe] to move to an apartment," *id.* at 19, but as will be shown in Issue 3 herein,

**D.      Plaintiffs' claims against the BCB Defendants.**

The facts pertaining to Plaintiffs' claims against the BCB Defendants, which are wholly dependent on Plaintiffs' having a live claim related to their services, are discussed in Issue 7.

## SUMMARY OF ARGUMENT

The first two issues in the Brief of Appellants discuss only the immunity issues which led to the dismissal of the BCB Defendants. Br. of Appellants at 23-33. Once the Brief of Appellants finally discusses the issue of whether either of the Plaintiffs has a live claim, the brief does not specifically mention two of the three reasons (lack of ripeness and lack of standing) cited by the district court for dismissing Plaintiffs' claims for lack of any live claims. However, unless Plaintiffs can show that they have at least one live claim, that is, a claim that is ripe, not moot, and which Plaintiffs have standing to raise, then there is no need to for the Court even to consider the immunity issues pertaining to the BCB Defendants.

Plaintiffs do not in fact have any live claims, and the district court was correct in so holding. (Issues 1 through 4 herein.) Plaintiffs have effectively abandoned on appeal any challenge to the district court's conclusions on ripeness and standing by failing to present argument that discusses those issues. (Issues 3 through 5.) Even if they had argued ripeness and standing in any way other than by

the request for an apartment never reached the point where Defendants could make a decision on it.

way of passing and oblique references (at most), Plaintiffs have not pointed to any facts in the record to show (a) that the claimed need for a supervised apartment for Kobe was ever actually presented to and decided by the service coordinator or DDSN (Issue 3), or (b) that the claimed need for increased respite services for Mark was supported by anything more than speculation. (Issue 4.)

With regard to mootness, Plaintiffs have not shown any reason to believe that DHHS would alter the policy pertaining to ADHC eligibility criteria not just for Plaintiffs, but for all other developmentally disabled persons as well. This claim by Plaintiffs also amounts only to than unsupported speculation. (Issue 1.) The claim that Plaintiff Kobe's speech device might not remain with him is likewise unsupported. (Issue 2.)

Plaintiff Kobe's claim of a violation of the ADA's anti-retaliatory provisions is at best only sparsely argued on appeal. Even if the point had been more fully argued, the claim lacks factual and legal merit, because Plaintiff Kobe failed to show any act by him that triggered the anti-retaliation provisions, and likewise failed to show that any acts by any Defendants (none of whom are specified) constituted acts of retaliation. (Issue 6.)

The district court's determination that the BCB members were immune from suit in their official capacities under the Eleventh Amendment and *Ex parte Young* was sound and should be affirmed. Plaintiffs failed to establish the requisite

"special connection" between any of the BCB members and the state action challenged as unconstitutional and therefore these state defendants were not subject to suit under the narrow *Ex parte Young* exception to Eleventh Amendment immunity. These defendants were also not subject to suit in their official capacity under *Ex parte Young* because the relief sought against them was retrospective and because, as to BCB members Chellis and Cooper, they left office prior to the commencement of the action and were therefore not subject to suit in an official capacity for *any* prospective injunctive relief. (Issue 7(a).)

With respect to those BCB members who were sued in an individual capacity — Chellis, Cooper, Leatherman and Eckstrom — the district court correctly concluded that they were entitled to legislative immunity which barred the assertion of claims against them individually. Moreover, dismissal as to these defendants on the individual claims was also proper because none was subject to suit in an individual capacity under Title II of the ADA or the Rehabilitation Act, the purported claims against them under 42 U.S.C. § 1983 failed to state a factually plausible claim for relief as required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and because there is no private right of action for damages under the Supremacy Clause. (Issue 7(a).)

## STANDARD OF REVIEW

Review of the issues decided by dispositive motions in this case is de novo.

*Webster v. U.S. Dept. of Agriculture*, 685 F.3d 411, 421 (4th Cir. 2012);

*Duckworth v. State Admin. Bd. of Election Laws*, 332 F.3d 769, 772 (4th Cir.2003).

In addition, this Court may "affirm on any ground appearing in the record,

including theories not relied upon or rejected by the district court." *Scott v. United

States*, 328 F.3d 132, 137 (4th Cir. 2003).

## ARGUMENT

1.      **The district court correctly ruled that Plaintiffs' claims pertaining
        to ADHC services were moot.**

Plaintiffs' Issue 3, Br. of Appellants at 33-35, argues that the issues relative

to ADHC services constitute "a classic case of voluntary mootness."   Plaintiffs

contend the district court erred in dismissing the ADHC claims as moot when

DHHS allegedly failed to establish that the standards used to determine participant

eligibility complained of would not be reinstated.  *See* Br. of Appellants, p. 34.

"[I]t is 'well settled that [the] defendant's voluntary cessation of a challenged

practice does not deprive a federal court of its power to determine the legality of

the practice unless it is absolutely clear that the allegedly wrongful behavior could

not reasonably be expected to recur.'" *Doe v. Kidd*, 501 F.3d 348, 354 (4th Cir.

2007) *citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528

U.S. 167, 189 (2000).

As set forth above, on November 7, 2011, DHHS revised the eligibility requirements which removed the medical necessity provision that limited access to ADHC services by ID/RD waiver participants of which Plaintiffs complained. ECF No. 237-9. There was no evidence presented to the district court to indicate that in the approximately three (3) years that followed from the November 2011 letter to the date of the Order on appeal, there was any intent to reinstate or attempt to reinstate the medical necessity requirement. In addition, the same change in criteria had already been made by DHHS in another Medicaid waiver in 2009 that had nothing to do with the present plaintiffs and that has not been changed since then. ECF No. 237-9 at 2. Accordingly, it is absolutely clear that the alleged wrongful conduct could not *reasonably* be expected to recur and the district court correctly dismissed the ADHC claims as moot.

Assuming *arguendo* that DHHS intends to reinstate the limitation on ADHC services to ID/RD waiver participants at the conclusion of this litigation or sometime thereafter, it would still be prohibited from reducing ADHC services to Kobe and Mark. Plaintiffs and DHHS entered into binding agreements memorialized by Consent Orders which stated that each Plaintiff met the criteria for and would continue to receive ADHC services by the qualified provider of their choice. ECF No. 236-1, p. 6; ECF No. 236-2. Accordingly, any violation of terms of the Consent Orders would be enforceable through a state court proceeding. *See*

*Miller v. Miller*, 375 S.C. 443, 454, 652 S.E.2d 754, 760 (S.C. Ct. App. 2007). Therefore, it is absolutely clear that the alleged wrongful conduct complained of could not reasonably be expected to recur and the district court correctly dismissed the ADHC claims as moot.

### 2. The district court correctly ruled that Plaintiffs' claims pertaining to Kobe's ACD and wheelchair were moot.

Plaintiffs' Issues 3, 5 and 6, Br. of Appellants at 33-35, 39-40, 42, argues that the claims relative to Kobe's request for an ACD and alleged request for a wheelchair should not have been dismissed as moot as DHHS has not "voluntarily ceased the conduct of failing to provide services with reasonable promptness . . .." *See* Br. of Appellants, pp. 33, 39.  Kobe further argues the ACD and wheelchair could be provided without modification to the State's Medicaid program and failing to provide said devices is a violation of the integration mandate. *Id.*, p. 42.

As noted by the district court, Kobe's prayer for relief with regard to the ACD and wheelchair was a request "that DHHS be ordered to pay for the wheelchair and speech device ordered by his physician to be funding [sic] by Defendants."  ECF no. 296, p. 9.

As Kobe received an ACD and a wheelchair and he was not financially responsible for the payment of either, the relief requested was rendered moot. Therefore, the district court correctly dismissed Kobe's claims relative to the ACD and wheelchair as moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996), *citing*

*Mills v. Green*, 159 U.S. 651, 653 (1895) (stating federal courts may not "give opinions upon moot questions or abstract propositions").

**3.    The district court correctly concluded that Plaintiff Kobe's claims regarding a supervised apartment were not ripe.**

The Amended Complaint contained a passing allegation that "Defendants have violated Section 504 [29 U.S.C. § 794(a)] by failing to provide Kobe with an ACD and services in an apartment setting. . . ." ECF No. 65 at 53, ¶ 306. There was so little reference to this issue in the Amended Complaint that the district court initially concluded that the issue was "not raised until Plaintiffs' motion for partial summary judgment and thus [was] not properly before the court." ECF No. 296 at 11 n. 1. In the course of denying Plaintiffs' motion to alter or amend, the district court subsequently addressed this matter further. The court noted that "[a]ccording to Plaintiffs, Kobe made a request of the Richland/Lexington Disabilities and Special Needs Board to live in an apartment setting in or around December 2013. See ECF No. 279-8, 31" ECF No. 364 at 3. The court then concluded that there was "no evidence regarding if or when the request was forwarded to the Department of Disabilities and Special Needs (DDSN), or whether DDSN has rendered an unfavorable administrative decision or failed to respond to Kobe's request." *Id.* As a result, the court held, the claim pertaining to a supervised apartment was "not ripe for judicial review." *Id.* at 3-4, citing and quoting *Pashby v. Delia*, 709 F.3d 307, 317 (4th Cir. 2013) ("For a claim to be ripe, it must involve

an administrative decision [that] has been formalized and its effects felt in a concrete way by the challenging parties.").

The "evidence" cited by Kobe in the district court consisted of unsworn email exchanges with the RichLex Service Coordinator, Lynn Lugo. In the first of those exchanges, dated May 21, 2012, Ms. Lugo provided the SLP assessment which she had prepared, and voiced her understanding that "UCP [the possible provider] will now take this as the first step in requesting outlier funding. ECF No. 279-2, p. 2. In the second exchange cited in the district court by Kobe and occurring on December 17, 2013, Ms. Lugo commented that "UCP is in the process of preparing a budget that will encompass all needed supports for [Kobe] to live in an apartment setting. *Once this is completed, this will be sent to DDSN by UCP for approval of funds.*" ECF 279-8, p. 31 (emphasis added). Ms. Lugo closed by noting that she had "checked with UCP yesterday and the budget has not yet been completed, but is in process." *Id*. This "evidence" cited by Kobe established only that the SLP assessment prepared by his RichLex Service Coordinator had been forwarded on to UCP, that once UCP prepared and submitted its budget, the application for approval of funds would be sent to DDSN, but that the UCP budget was not yet completed. There was no evidence that the budget was ever completed by UCP and submitted to the service coordinator, much less that it was forwarded by her to DDSN.

In holding that the claim pertaining to an apartment placement was not ripe for adjudication, the district court was therefore clearly correct. First, as discussed in the Statement of Facts on this issue, there was no evidence that the question of an apartment placement had ever reached the point where action by the service coordinator was required. Secondly, after this issue had been raised by Plaintiff Kobe in a summary judgment filing in early 2014, ECF No. 250 at 27, 28, the DDSN Defendants submitted an affidavit from a DDSN official dated February 21, 2014, in which that official averred that a search of DDSN's records revealed that no request for SLP services, including an apartment, had ever been made to DDSN on behalf of Kobe. ECF No. 264-1, Par. 4. Continuing, the affidavit stated that "[l]ikewise, given the absence of a request, there is no evidence that any DDSN official has reached any conclusion, either affirmative or negative, about the possibility of an SLP placement for Kobe." *Id.*, ¶ 5. Thirdly, in the ensuing seven months between that affidavit and the summary judgment hearing in the district court, Plaintiff supplied no evidence that the service coordinator was ever provided with the budget from UCP that would have caused the apartment request to advance toward further consideration. Finally, even when Plaintiff's counsel filed a lengthy Motion to Alter or Amend on October 28, 2014, after the district court had dismissed the health-related Defendants from the case, there was no attempt to

show that the apartment request had ever actually become ripe for consideration by the service coordinator, much less by DDSN or by the district court.

On appeal, Plaintiff Kobe has provided no argument whatsoever on the issue of ripeness. The claim pertaining to the alleged need for a supervised apartment arises only in Issues 5 and 6 of the Brief of Appellants. In Issue 5 of the Brief of Appellants, which discusses the "reasonable promptness" claim, Plaintiff Kobe argues only that his "treating professionals . . . have opined" that he could live in an apartment with adequate supports. Br. of Appellants at 39. The same thought is expressed in a two-sentence paragraph in Issue 6. Br. of Appellants at 43. However, neither of those arguments addresses or in any way overcomes the district court's conclusion and the averments in the above-cited affidavit that DDSN neither received nor acted upon Plaintiff's supposed request for an apartment placement. As a result, and for the reasons set forth in the district court's order and the authorities cited therein, Plaintiff Kobe has made no showing on appeal that his supervised apartment claim ever became ripe for adjudication. *See also, McGhee v. Director, Dept. of Mental Health & Hygiene,* 153 F.3d 721 (4th Cir. 1998)(unpublished); *Levin v. S. Carolina Dep't of Health & Human Servs.*, 2015 WL 1186370, at *9 (D.S.C. 2015)(claim was not ripe where state agency "has not made any official determination, whether it be acceptance or denial, of these requested services")(citing *McGhee, supra*).

**4.     The district court correctly concluded that Plaintiff Mark's claims regarding additional respite care were not ripe.**

The district court noted that the Amended Complaint contained allegations by Mark to the effect that an alleged 2010 change in his monthly hours of respite care put him at risk of institutionalization. ECF No. 296 at 8. The court then concluded that this contention by Mark was "too remote and speculative to be ripe for federal judicial review." ECF No. 296 at 11.

On appeal, Plaintiff Mark does not address this basis for dismissal at all. In fact, the only specific reference to Mark's respite care services in the Argument section of the Brief of Appellants is found in Issue 4. That issue pertains to mootness. The district court never held that this claim by Mark was moot, but held only that there was not enough proof concerning this claim to take it beyond the level of speculation, therefore rendering it unripe. ECF No. 296 at 11. The Brief of Appellant cites no evidence to the contrary. *See* Br. of Appellants at 20, which contains only a conclusory statement that "the cap of 240 hours [of respite care services] a month places him at risk of institutionalization if his sister became ill or had a family emergency." This bare, unsupported assertion completely fails to prove the claim that there might be some risk of institutionalization if Mark's respite care were to be limited in some fashion. As a result, the district court correctly dismissed this claim as being remote and speculative. ECF No. 296 at 11.

**5.    Plaintiff has not challenged on appeal the district court's conclusions regarding lack of standing.**

The district court held that Plaintiffs lacked standing to present their more generalized assertions pertaining to "the administration and operation of [DHHS and DDSN,] agencies of the State of South Carolina." ECF No. 296 at 13. Citing such cases *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), the court held that Plaintiffs showed "no cognizable particularized injury" that would enable them to maintain their broad, vague allegations. *Id.* This was only logical, because Plaintiffs simply failed to show any deprivation of anything at all.

On appeal, Plaintiffs simply do not challenge this conclusion of the district court. The Brief of Appellants contains no reference to the concept of standing to sue. Nor is there any mention of the word "injury," in the context of the need to show the existence of a particularized injury. The Brief of Appellants likewise does not discuss in this context any of the six Supreme Court cases on standing that are referenced in the district court's discussion of lack of standing.[12] While the Brief of Appellants expends approximately 15 pages (pp. 3 through 18) in a discussion of alleged general management and funding issues, the brief does not address at all the district court's conclusion that Plaintiffs lack standing to raise those issues.

---

[12] The Brief of Appellants does mention one of the six cases, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000), but only in the context of the separate issue of mootness, as opposed to standing. Br. of Appellants at 33.

Plaintiffs' failure to address the issue of standing amounts to an abandonment of that issue on appeal. *See* Fed. R. App. P. 28(a)(9) (requiring an appellant to brief all issues raised on appeal); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n. 6 (4th Cir.1999) (holding that failure to comply with Rule 28(a)(9) "triggers abandonment of that claim on appeal").

Even if the Brief of Appellants had undertaken to address the issue of standing, the district court was correct in holding that no standing exists. ECF No. 296 at 11-13. Plaintiffs' generalized assertions of injury from practices of the various agencies simply never make a connection between those general assertions and any alleged injury to either of the Plaintiffs.

**6.**     **Plaintiff Kobe's "retaliation" claims are only vaguely and cursorily argued, and are without legal or factual merit in any event.**

Plaintiffs' Issue 4, Br. of Appellants at 37-39, comprises little more than one single page. There it is claimed that unspecified Defendants engaged in "denials of services [that] were "retaliatory." *Id.* at 38. Plaintiffs do not discuss any evidence of retaliatory conduct by any specific Defendant. While a few cases and statutes are cursorily cited, there is simply no attempt to develop an argument about which facts constitute evidence of retaliation, nor is there an attempt to identify any specific Defendant as the party who engaged in the alleged acts of retaliation.

As is the case for the issue of standing, Plaintiffs' "failure to develop such argument amounts to an abandonment of those issues on appeal." *Elezovic v. England*, 200 F. Appx 193, 194 (4th Cir. 2006), *See also,* Fed. R. App. P. 28(a)(9), *supra*; *Edwards v. City of Goldsboro*, *supra.*

Even if the merits of this "retaliation" claim were to be considered, the claim is completely without factual or legal merit. Under 42 U.S.C. § 12203, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." There has been no showing that either Plaintiff engaged in any of the types of conduct protected by 42 U.S.C. § 12203. Nor has there been a showing that Kobe[13] suffered an adverse action subsequent to engaging in the protected conduct and that there was a causal link between the protected activity and the adverse action. *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002).

On appeal, the "retaliation" argument pertains only to alleged denials of speech-related services by unspecified persons, and to the alleged failure of other unspecified persons to rule on Kobe's alleged request for an apartment placement. Br. of Appellants at 38. First of all, however, the speech device was in fact

---

[13] No claim of retaliation is made with regard to Mark.

provided, and secondly, the apartment request never became ripe for decision, as discussed in Issue 3 above. Moreover, Plaintiff has not shown even a hint of causal connection between these alleged actions or inactions and any action protected by the ADA. Accordingly, this entire anti-retaliation claim, which is only sparsely argued at best, fails to establish any triable issue of fact.

> **7.    The district court properly dismissed all claims against the BCB members because the official capacity claims are barred by the Eleventh Amendment and do not fit the *Ex parte Young* exception and because the individual capacity claims are barred by the doctrine of legislative immunity and fail as a matter of law for other reasons as well.**

Although the Amended Complaint purports to state a total of eight causes of action, some of the causes of action are not alleged against the BCB members or any of them, and several causes of action are asserted against fewer than all the BCB members. The ADA claim (Count One) is asserted against those defendants who were BCB members in 2009; the first § 1983 claim (Count Three) is alleged against the 2009 BCB members and Governor Haley, among others; the second § 1983 claim (Count Four) and the Supremacy Clause claim (Count Six) are both alleged against all defendants; and the RICO claim (Count Seven) is alleged against numerous defendants, but no BCB members except Governor Haley and former Governor Sanford. [ECF no. 135, pp. 5-6; ECF no. 217, pp. 5-6]. None of the BCB members is named as a defendant on the Rehabilitation Act claim (Count Two), the conspiracy claim under 42 U.S.C. § 1985(3) (Count Five), or the

subsequently stricken pendent claim for neglect, deliberate indifference assault and battery, and intentional infliction of emotional distress (Count Eight). [*Id.*].

Further, some of the BCB members were sued only in their official capacity. Specifically Governor Haley, Treasurer Loftis, and Representative White were sued only in their official capacity. [ECF no. 135, pp. 5-7; Doc. 43-1, p. 31; ECF no. 65, para. 25]. The remaining BCB members were sued in both their official and individual capacities. [ECF no. 65, para. 24; ECF no. 135, pp. 6-7].

Finally, Plaintiffs have not appealed the dismissal of BCB members Loftis and White who, as mentioned, were sued only in their official capacity. [Doc. 43-1, p. 7]. Neither have Plaintiffs appealed the dismissal of former Governor Sanford. [Notice of Appeal].

Thus, what remains for consideration on appeal is the district court's dismissal of all official capacity claims against BCB members Haley, Chellis, Cooper, Leatherman and Eckstrom and the dismissal of the individual capacity claims against BCB members Chellis, Cooper, Leatherman and Eckstrom.

The district court correctly concluded that the official capacity claims against all BCB members are barred by the Eleventh Amendment. The official capacity claims against BCB members Chellis and Cooper were subject to dismissal for the additional reason that those BCB members left office in 2011.

[ECF no. 65, paras. 24 and 25]. Therefore, the court's dismissal of all official capacity claims against the BCB members should be affirmed.

The district court's conclusion that the individual capacity claims against BCB members Chellis, Cooper, Leatherman and Eckstrom were barred by the doctrine of legislative immunity is also sound. Dismissal of any purported ADA claim against these BCB members in their individual capacity is proper on the additional ground that none of them is a "public entity" within the meaning of the ADA or a "program or activity receiving federal financial assistance" within the meaning of the Rehabilitation Act; hence, none is subject to individual suit under Title II of the ADA or the Rehabilitation Act. Dismissal of the individual capacity claims against these BCB members under § 1983 and the Supremacy Clause was also proper because the Amended Complaint fails to state a factually plausible claim for relief against any of them under § 1983 and because there is no private right of action for *damages* under the Supremacy Clause.

> **a.** **The official capacity claims are barred by the Eleventh Amendment and, as to BCB members Chellis and Cooper, were properly dismissed for the additional reason that they left office in 2011.**

Plaintiffs contend that the district court erred in holding that their claim against the BCB members are barred by the Eleventh Amendment. Specifically, they argue that Congress validly abrogated Eleventh Amendment immunity as to claims arising under Title II of the ADA and that the State of South Carolina

waived Eleventh Amendment immunity as to claims under the Rehabilitation Act. With respect to their other claims, Plaintiffs maintain that Eleventh Amendment immunity does not apply because they are alleging ongoing violations of federal law such that the *Ex parte Young* fiction/exception to Eleventh Amendment immunity permits them to sue these defendants in their official capacities. These arguments do not withstand scrutiny and, for the reasons given by the district court and other reasons appearing in the record,[14] the district court's dismissal of this action as to the BCB members in their official capacities was proper and should be affirmed.

The Eleventh Amendment to the United States Constitution provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. "Although by its terms the [Eleventh] Amendment applies only to suits against a State by citizens of another State," the Supreme Court has long "extended the Amendment's applicability to suits by citizens against their own States." *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Moreover, because a suit against a State officer in his official capacity is regarded

---

[14] This Court "may affirm the dismissal by the district court upon the basis of any ground supported by the record, even if it is not the basis relied upon by the district court." *Hutto v. South Carolina Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014) (internal quotations omitted).

as "a suit against the State itself[,]" *Will v. Michigan Dep't of State Police*, 491

U.S. 58, 71 (1989), the Eleventh Amendment cannot ordinarily be circumvented

merely by suing state officers in their official capacity rather than suing the State

itself. While the Eleventh Amendment thus generally bars individual suits against

States and State officers in their official capacities, an exception exists under the

doctrine of *Ex parte Young*, 209 U.S. 123 (1908), which "permits a federal court to

issue prospective, injunctive relief against a state officer to prevent ongoing

violations of federal law." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir.

2010). Individuals may also sue a State and State officers in federal court if the

State has consented to be sued in federal court or if Congress, acting pursuant to its

power to enforce the Fourteenth Amendment by "appropriate legislation", U.S.

Const., amend. XIV, § 5, has abrogated the States' Eleventh Amendment

immunity. *See Garrett*, 531 U.S. at 363. ("The ultimate guarantee of the Eleventh

Amendment is that nonconsenting States may not be sued by private individuals in

federal court[,]" but "Congress may abrogate the States' Eleventh Amendment

immunity when it both unequivocally intends to do so and act[s] pursuant to a

valid grant of constitutional authority.") (internal quotations omitted; alteration

original).

Plaintiffs insist that Congress abrogated the States' Eleventh Amendment

immunity when it adopted Title II of the ADA and cite *Tennessee v. Lane*, 541

U.S. 509 (2004), as "controlling." [Doc. 43-1, p. 28]. But they are mistaken. *Lane* holds only that "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." *Lane*, 541 U.S. at 533-34. Likewise, *Constantine v. Rector and Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005) holds only that Title II of the ADA validly abrogated Eleventh Amendment immunity "as it applies to public higher education." *Id.*, at 490. Thus, neither the Supreme Court nor this Court has held that Title II abrogates Eleventh Amendment immunity in all cases. The Supreme Court, in fact, has eschewed any such blanket approach and has counseled that whether Title II has overridden the States' sovereign immunity should be determined "on a case-by-case basis — '[w]ith respect to the particular [governmental] services at issue in [the] case.'" *Guttman v. Khalsa*, 669 F.3d 1101, 1104 (10th Cir. 2012), quoting *Lane*, 541 U.S. at 527 (alterations by Tenth Circuit). *Lane*, then, is certainly not "controlling." *See Guttman*, 669 F.3d at 1122 (noting post- *Lane* "trend of courts holding that, absent the need to vindicate a fundamental right or a suspect class, Congress may not abrogate state sovereign immunity [under Title II].").

States do waive their Eleventh Amendment immunity under the Rehabilitation Act by accepting federal funds, *see Constantine*, 411 F.3d at 490-96,

but Plaintiffs' Rehabilitation Act claim is not asserted against any of the BCB members. [ECF no. 135, pp. 5-6; ECF no. 217, pp. 5-6]. Since neither this Court nor the Supreme Court has addressed, much less settled, the issue of whether Title II validly abrogates Eleventh Amendment immunity with respect to the particular governmental services at issue in this action, "the issue of whether . . . a state official[ ] can be sued in [his official] capacity [for alleged violations of federal law] turns on an application of . . . *Ex parte Young.*" *Peter B. v. Sanford*, 2010 WL 5684397, at * 2 (D.S.C.), Report and Recommendation adopted 2011 WL 347019 (D.S.C. 2011). *See Constantine*, 411 F.3d at 496-98 (recognizing that *Ex parte Young* analysis applies to claims for injunctive relief against state officials under Rehabilitation Act notwithstanding that State had waived Eleventh Amendment immunity under that Act). And, applying *Ex parte Young*, the district court properly determined that Plaintiffs' official capacity claims against the BCB members were not legally viable.

*Ex parte Young* permits state officials to be sued in their official capacities to redress *ongoing* violations of federal law even though the Eleventh Amendment would otherwise bar such claims. [ECF no. 135, p. 8]. The *Ex parte Young* exception to Eleventh Amendment immunity cannot be invoked "when the alleged violation of federal law occurred entirely in the past." *Debauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1998).

Official capacity claims under the *Ex parte Young* exception therefore apply only to *ongoing* violations of federal law which can be remedied by prospective injunctive relief. Moreover, under Fed. R. Civ. P. 25(d), officials who leave office prior to or during the pendency of an action are dismissed by operation of law. Fed. R. Civ. P. 25(d). Thus, a state official sued in his official capacity for injunctive relief "leaves the case behind" when he leaves office. *Scott v. Lacy*, 811 F.2d 1153, 1154 (7th Cir. 1987). Since former Treasurer Chellis left office in 2011 and former Representative Cooper did likewise (ECF no. 65, para. 25), neither of them is subject to suit in his official capacity. On that basis alone, they were entitled to dismissal of all claims asserted against them in their official capacities.

Because BCB members Chellis and Cooper are no longer in office and because Plaintiffs are not appealing the dismissal of their successors, Defendants Loftis and White [Doc no. 43-1, pg. 7], all that remains is the propriety of the district court's dismissal of the official capacity claims against Governor Haley, Senator Leatherman and Comptroller General Eckstrom.

The *Ex parte Young* exception, which "permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law[,]" *McBurney*, 616 F.3d at 399, requires that there be a "'special relation' between the state officer sued and the challenged [state act]. . .." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001); *McBurney*,

616 F.3d at 399 ("[W]e must find a 'special relation' between the officer being sued and the challenged statute before invoking the [*Ex parte Young*] exception."). What is necessary is a "proximity to and responsibility for the challenged state action, which is not met when an official merely possesses '[g]eneral authority to enforce the laws of the state.'" *McBurney*, 616 F.3d at 399 (citation omitted). "A court may look to state law to determine whether the requisite connection exists between an individual defendant and the federal statute at issue." *Id.*

Applying this law, the district judge correctly concluded that Governor Haley, Senator Leatherman and Comptroller General Eckstrom lacked the required "special relation" to the acts challenged by Plaintiffs. The court also correctly determined that insofar as Governor Haley is being sued for the purported acts of former Governor Sanford, Plaintiffs were seeking retrospective, not prospective relief.

This court's decision in *Hutto v. South Carolina Ret. Sys.*, 773 F.3d 536 (4th Cir. 2014), reaffirmed the narrowness of the *Ex parte Young* exception to Eleventh Amendment immunity of state officials sued in their official capacity:

> The *Ex parte Young* exception to Eleventh Amendment immunity applies only where a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional has some connection with the enforcement of the act. Thus, we have held that a governor cannot be enjoined by virtue of his general duty to enforce the laws, . . ..
> The requirement that there be a relationship between the state officials sought to be enjoined and the enforcement of the

> state statute prevents parties from circumventing a State's Eleventh Amendment immunity. As the Court explained in *Ex parte Young*, if the constitutionality of every act passed by the legislature could be tested by a suit against the governor and attorney general, based upon the theory that the former, as the executive of the State, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes, it would eviscerate the fundamental principle that [States] cannot, without their assent, be brought into any court at the suit of private persons.

*Hutto*, 773 F.3d at 550 (internal quotations and citation omitted; second alteration in *Hutto*).

Indeed, in *Hutto*, the Court affirmed the dismissal of BCB members who, although they were trustees of the South Carolina State Retirement Systems, had no responsibility for the payroll deductions for retirement that the plaintiffs were challenging as violative of their federal constitutional rights. *Hutto*, 773 F.3d at 550-51. Thus, although the state officials were trustees of the Retirement System, because they had "no connection with the enforcement of the [challenged state Act]," "the *Ex parte Young* exception does not apply and . . . the state officials [were] thus entitled to Eleventh Amendment immunity on the claims seeking prospective injunctive relief." *Id.*, 773 F.3d at 551.

Plaintiffs argued that Governor Haley had the requisite special connection to the actions challenged as contrary to federal law because the Governor has general supervisory authority over SCDHHS and SCDDSN, including the power to appoint

and remove the director of SCDHHS, with the advice and consent of the Senate, and to appoint and remove SCDDSN Commission members; her name appears on SCDHHS letterhead; she made statements to the media "that she is working closely with the SCDHHS director to provide as much healthcare for South Carolinians for as little as possible;" and she joined in a letter sent to the President by thirty-one governors advocating Medicaid reform which Plaintiffs contend would be to their detriment. [ECF no. 135, p. 9]. As the district court recognized, none of these facts is sufficient to establish the proximate and special relation between Governor Haley and the state actions challenged as violative of federal law to overcome the Eleventh Amendment.

The fact that the Governor has appointment and general supervisory authority over the state official(s) responsible for enforcing a challenged state statute alleged to be unconstitutional is insufficient to overcome her Eleventh Amendment immunity. *See Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (absent specific duty to enforce the challenged statutes, governor's general duty as state's chief executive to enforce state's law insufficient under *Ex parte Young*); *see also Peter B. v. Sanford*, 2010 WL 5648397, at * 3-4; *Kuck v. Danaher*, 822 F. Supp. 2d 109, 142-43 (D. Conn. 2011); *D.G. ex rel. Stricklin v. Henry*, 591 F. Supp. 2d 1186, 1189 (N.D. Ok. 2008); *Lenscrafters, Inc. v. Sundquist*, 184 F. Supp. 2d 753, 757-58 (M.D. Tenn. 2002); *Sweatt v. Hull*, 200

F. Supp. 2d 1162, 1175-76 (D. Ariz. 2001) (governor's power to appoint official(s) responsible for enforcing alleged unconstitutional state law not sufficient to subject Governor to suit under *Ex parte Young*). Neither are the other factors cited by Plaintiffs — the presence of Governor Haley's name on DHHS letterhead and her general policies and opinions on budgetary and political matters — adequate to establish the requisite "special relation" that must exist between a state official and alleged unconstitutional action before Eleventh Amendment immunity can be circumvented. As the district court remarked, "[a] governor's name on the letterhead of an agency is really nothing more than a formality or acknowledgment of the structure of the state's government." [ECF no. 135, p. 11]. Moreover, this Court has recognized that "[t]he fact that [a governor] has publicly endorsed and defended the challenged statutes does not alter our analysis [holding that the governor cannot be sued under the *Ex parte Young* exception due to the lack of required "special relation"]." *Waste Mgmt. Holdings*, 252 F.3d at 331.

In sum, Plaintiffs failed to establish the "special relation" between Governor Haley and the state action that they challenge as violative of federal law. The district court therefore correctly concluded that the narrow *Ex parte Young* exception did not apply and that Governor Haley was entitled to dismissal under the Eleventh Amendment because she is sued only in her official capacity.

The district court also properly rejected Plaintiffs' argument that Governor Haley was liable in her official capacity for alleged *past* acts of former Governor Sanford. *Ex parte Young* authorizes only prospective injunctive relief against *ongoing* violations of federal law and "does not permit judgments against state officers declaring that they [or their predecessors] violated federal law in the past." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Thus, Governor Haley enjoys Eleventh Amendment immunity from liability in her official capacity for alleged past acts of her predecessor.

———————

Just as there is no special relation between Governor Haley and any alleged unconstitutional statutes or actions challenged by Plaintiffs, there is likewise no special relation between Senator Leatherman and/or Comptroller General Eckstrom and any purported *ongoing* violation of federal law. As the district court explained in dismissing the official capacity claims against these defendants:

> The *Ex parte Young* exception to Eleventh Amendment immunity only applies to prospective injunctive relief. Here, Plaintiffs would not be able to obtain any prospective injunctive relief from these Defendants [Leatherman and Eckstrom]in their official capacities as they would not have any control or enforcement rights over any agency regarding the Plaintiffs' ADHC or other Medicaid services.

[ECF no. 217, p. 8*]. See Hutto*, 773 F.3d at 551 (holding that the *Ex Parte Young* exception does not apply where the state officials named as defendants have no

connection with the enforcement of the challenged act). Accordingly, the district court correctly determined that "Plaintiffs' claims against these Defendants [Leatherman and Eckstrom] should be dismissed as they would have absolutely no role to play in regard to providing Plaintiffs with any prospective injunctive relief." [*Id.* (footnote omitted)].

_____

So, none of the BCB members is subject to suit in an official capacity on any of the claims that Plaintiffs purport to state against them. Although Plaintiffs do not argue otherwise, state officials are immune from liability in their official capacity under RICO. *Production & Leasing Ltd. v. Hotel Conquistador, Inc.*, 709 F.2d 21 (9th Cir. 1983). Congress neither abrogated the States' Eleventh Amendment immunity when it enacted RICO, *Oliva v. State of Maryland*, 2003 WL 24026308 (D. Md. 2003), nor has South Carolina consented to be sued under that federal statute. *See* S.C. Code Ann. § 15-78-20(e) (expressly reserving State's Eleventh Amendment immunity). Accordingly, any suggestion that Governor Haley is subject to suit in this action under RICO is without merit.

        **b.**      **The individual capacity claims against the BCB members were properly dismissed as barred by the doctrine of legislative immunity. Dismissal was also proper because none of the BCB members is a public entity under the ADA; the § 1983 claims fail to state a factually plausible claim for relief against any BCB member; and there is no right of action for damages under the Supremacy Clause.**

        **(1)**    **Legislative immunity bars the individual capacity claims.**

The district court held that BCB members Chellis, Cooper, Leatherman and Eckstrom were entitled to legislative immunity insofar as they were sued in their individual capacities. [ECF no. 135, pp. 15-19; ECF no. 217, pp. 9-11]. The court noted Plaintiffs' arguments that the actions of the BCB members were not "within the sphere of legitimate legislative activities," but rejected that argument, relying on the Supreme Court's decision in *Bogan v. Scott-Harris*, 523 U.S. 44 (1998), this Court's decision in *Kensington Vol. Fire Dep't, Inc. v. Montgomery Co.*, 684 F.3d 462 (4th Cir. 2012), and the undisputed facts. [ECF no. 135, pp. 15-19; ECF no. 217, pp. 9-11]. Because the district court's conclusion accords with controlling precedent and the undisputed material facts, its judgment should be affirmed.

*Bogan* reiterated that "[a]bsolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Id.*, 523 U.S. at 54 (internal quotations omitted). And the Court was explicit that the motive(s) for an act — alleged or actual — is (are) irrelevant to the question of whether the act is

legislative. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. The privilege of absolute immunity would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based on a jury's speculation as to motives." *Bogan*, 523 U.S. at 54 (internal quotations omitted; alteration in *Bogan*).

The contested action in *Bogan* was a municipal council's vote to eliminate certain positions, including that of the plaintiff, who alleged that the vote was motivated by her filing a complaint against a subordinate who repeatedly used racial and ethnic slurs. *Bogan*, 523 U.S. at 46-47. In other words, the claim was that the council's adoption of a budget ordinance amendment that reordered priorities, reduced funding for certain services, and eliminated the plaintiff's position was all a ruse and that the real purpose was to retaliate against the plaintiff for her protected speech. A jury agreed and, in denying the mayor and council's motion for judgment notwithstanding the verdict, so did the district judge, who wrote "that the ordinance amendment passed by the city council was an individually-targeted administrative act, rather than a neutral, legislative elimination of a position which incidentally resulted in the termination of plaintiff." *Bogan*, 523 U.S. at 48. The First Circuit agreed with the jury and district judge, *id.*, at 48, but the Supreme Court did not. The Court held that the city

46

officials' actions were unquestionably legislative and faulted the First Circuit for "erroneously rel[ying] on petitioners' subjective intent in resolving the logically prior question of whether their acts were legislative." *Id.*, at 54.

Even Plaintiffs acknowledge that the BCB members' votes regarding various funding matters, which Plaintiffs' seek to challenge, constituted legislative activity, although they do so while arguing that these defendants are not entitled to legislative immunity. *See* Doc. 43-1, pp. 26-27 (contending that BCB members "are not entitled to legislative immunity because their acts were unconstitutional and they violated the Separation of Powers by acting as a five member legislature by dividing up and spending more than $5 million. . ..."). "Whether an act is legislative turns on the nature of the act," *Bogan*, 523 U.S. at 54, and the acts of the BCB members of which Plaintiffs complain was plainly legislative. As the district court explained:

> [T]he acts of the SCBCB are ones which generally bear the marks of public decisionmaking by observing formal legislative procedures. The SCBCB had the authority to take the action which it did, and reviewing the minutes of the SCBCB meeting, the process appears facially to have been proper. The minutes from the meeting show that proper notice was provided of the meeting pursuant to S.C. Code Ann. § 30-4-80, the meeting was an open meeting, and the funds were expended pursuant to S.C. Code Ann. § 44-20-1170 with the approval of the DDSN Board. Further, it was the DDSN Boards which have reduced or attempted to reduce the services provided to Plaintiffs. Here, voting to approve SCDDSN's purchase of real estate with excess debt service funds was clearly a facially valid legislative action.

47

[ECF no. 135, pp. 16-17; ECF no. 217, pp. 10-11 (internal quotations and footnotes omitted)].

Discretionary policy decisions made by elected governmental officials that relate to budgetary priorities and to providing public services are legislative in nature. *Bogan*, 523 U.S. at 55-56. Indeed, Plaintiffs themselves acknowledge that the BCB "is responsible for providing regulatory oversight, policy development, monitoring of state finances, purchasing, personnel and real property transactions involving state and federal funds paid to the state." [ECF no. 65, p. 4]. Hence, the district court's conclusion that BCB members Chellis, Cooper, Leatherman and Eckstrom are entitled to legislative immunity from suit in their individual capacity is sound and should be affirmed.

### (2)   The BCB members are not subject to individual liability under the ADA or Rehabilitation Act.

To the extent that Plaintiffs purport to state claims under Title II of the ADA — or the Rehabilitation Act for that matter — against the BCB members in their individual capacities, those claims fail as a matter of law because neither Title II nor the Rehabilitation Act provides for individual liability.

Title II of the ADA prohibits discrimination by a "public entity," 42 U.S.C. § 12132, and defines the term "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National

Railroad Passenger Corporation and any commuter authority." 42 U.S.C. §

12131(1). Because this definition does not include individuals, a claim under Title

II of the ADA cannot be asserted against the BCB members or any of them

individually. *Baird v. Rose*, 192 F.3d 462, 471 (4th Cir. 1999); *Koenig v. Maryland*,

2015 WL 736575, at * 4 (D. Md. 2015).

The Rehabilitation Act prohibits discrimination on the basis of disability by

"any program or activity receiving federal financial assistance," 29 U.S.C. §

794(a), which is defined to mean:

> all of the operations of —
> (1)(A) a department, agency, special purpose district, or other
> instrumentality of a State or of a local government; or
> (B) the entity of such State or local government that distributes
> such assistance and each such department or agency (and each
> other State or local government entity) to which the assistance is
> extended, in the case of assistance to a State or local government;
> (2)(A) a college, university, or other postsecondary institution, or
> a public system of higher education; or
> (B) a local educational agency (as defined in section 7801 of
> Title 20), system of vocational education, or other school system;
> (3)(A) an entire corporation, partnership, or other private
> organization, or an entire sole proprietorship—
> (i) if assistance is extended to such corporation, partnership,
> private organization, or sole proprietorship as a whole; or
> (ii) which is principally engaged in the business of providing
> education, health care, housing, social services, or parks and
> recreation; or
> (B) the entire plant or other comparable, geographically separate
> facility to which Federal financial assistance is extended, in the
> case of any other corporation, partnership, private organization,
> or sole proprietorship; or
> (4) any other entity which is established by two or more of the
> entities described in paragraph (1), (2), or (3);

any part of which is extended Federal financial assistance.

29 U.S.C. § 794(b). Because the statutory definition of "program or activity" does not include individuals, none of the present or former BCB members is subject to suit individually under the Rehabilitation Act. *See Peter B. v. Sanford*, 2010 WL 568397, at * 4-5; *McCoy v. Conroy*, 2015 WL 1085129, at * 3 (D. Md. 2015). *See also Fitzgerald v. Barnstable Sch. Ctee.*, 555 U.S. 246, 257 (2009) (Title IX of the Education Amendments of 1972, which like the Rehabilitation Act, is modeled on Title VI of the Civil Rights Act of 1964, "has consistently been interpreted as *not* authorizing suit against school officials, teachers, and other individuals.") (emphasis added). As this Court observed in *Rendelman v. Rouse*, 569 F.3d 182 (4th Cir. 2009), "[I]t would be a novel use of the spending clause to condition the receipt of federal funds on the creation of an *individual capacity* damages action; we can find *no instance* in which the spending clause has been used in this manner." *Id.*, 569 F.3d at 189 (emphasis original). Thus, the Rehabilitation Act claim, like the Title II claim, fails as a matter of law insofar as it is asserted against any of the BCB members individually.

> **(3)     The purported § 1983 claims do not allege a factually plausible claim against any BCB member individually.**

Although legislative immunity sufficiently disposes of Plaintiff's section 1983 individual capacity claims against BCB members Chellis, Cooper,

Leatherman and Eckstrom in their individual capacities, dismissal of these claims may also be affirmed due to Plaintiffs' failure to state a factually plausible § 1983 claim against any of these defendants. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The district court alluded to this in observing that "none of the allegations in Count Three specifically refer to the [BCB] Defendants." [ECF no. 217, p. 8].

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The Amended Complaint fails to satisfy *Iqbal's* requirement that the plaintiff state a factually plausible claim against each defendant against whom a § 1983 individual capacity claim is asserted. For this additional reason, dismissal of the § 1983 claims against BCB members Chellis, Cooper, Leatherman and Eckstrom was proper and should be affirmed.

### (4) There is no private right of action for damages under Supremacy Clause.

Dismissal of the purported Supremacy Clause claim against BCB members Chellis, Cooper, Leatherman and Eckstrom is also supportable on additional grounds beyond those relied on by the district court. Specifically, the Supreme Court has held that the Supremacy Clause "is not a source of any federal rights." *Golden State Transit v. City of Los Angeles*, 493 U.S. 103, 107 (1989) (internal quotations omitted). Therefore, that clause cannot support a claim for damages

against a state official. *See U.S. v. South Carolina*, 720 F.3d 518, 525-26 (4th Cir. 2013) (recognizing implied right of action to seek *injunctive* relief under Supremacy Clause where plaintiff claims federal law preempts state law). Accordingly, even if legislative immunity did not bar the purported Supremacy Clause claim against these BCB members individually, the claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Appellees respectfully submit that the orders and judgment of the district court should be affirmed.

Respectfully submitted,

BY:   *s/ Kenneth P. Woodington*
WILLIAM H. DAVIDSON, II
KENNETH P. WOODINGTON
DAVIDSON & LINDEMANN, P.A.
Post Office Box 8568
Columbia, South Carolina 29202
(803) 806-8222

*Counsel for Appellees Buscemi, Butkus, Chorey, Huntress, Lacy, Laurent & Waring*

BY:   *s/ Vance J. Bettis*
VANCE J. BETTIS
GIGNILLIAT, SAVITZ & BETTIS, LLP
900 Elmwood Avenue, Suite 100
Columbia, South Carolina 29201
(803) 799-9311

*Counsel for Appellees Haley, Loftis & White*

52

BY:   *s/ Damon C. Wlodarczyk*
     DAMON C. WLODARCZYK
     RILEY, POPE & LANEY, LLC
     Post Office Box 11412
     Columbia, South Carolina 29211
     (803) 799-9993

     *Counsel for Appellees Keck, Forkner*
     *& Soura*

BY:   *s/ Patrick J. Frawley*
     PATRICK J. FRAWLEY
     DAVIS FRAWLEY, LLC
     Post Office Box 489
     Lexington, South Carolina 29071
     (803) 359-2512

     *Counsel for Appellee Leitner*

BY:   *s/ Christian Stegmaier*
     JOEL W. COLLINS, JR.
     CHRISTIAN STEGMAIER
     MEGHAN HAZELWOOD HALL
     COLLINS & LACY, P.C.
     Post Office Box 12487
     Columbia, South Carolina 29211
     (803) 256-2660

     *Counsel for Appellees Babcock Center,*
     *Unnamed Actors Associated with the*
     *Babcock Center & Johnson*

BY:   *s/ Robin L. Jackson*

ROBIN L. JACKSON
SENN LEGAL, LLC
Post Office Box 12279
Charleston, South Carolina 29422
(843) 556-4045

*Counsel for Appellees Chellis & Cooper*

BY:   *s/ Leslie A. Cotter, Jr.*

LESLIE A. COTTER, JR.
SHEILA M. BIAS
RICHARDSON, PLOWDEN
  & ROBINSON, P.A.
Post Office Drawer 7788
Columbia, South Carolina 29202
803-771-4400

*Counsel for Appellees Eckstrom
& Leatherman*

November 4, 2015

---

## CERTIFICATE OF SERVICE

---

       I hereby certify that on November 4, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Patricia L. Harrison, Esquire
Vance J. Bettis, Esquire
Damon C. Wlodarczyk
Patrick J. Frawley, Esquire
Christian Stegmaier, Esquire
Sandra J. Senn, Esquire
Robin L. Jackson, Esquire
Leslie A. Cotter, Jr., Esquire
Sheila M. Bias, Esquire

        *s/ Kenneth P. Woodington*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. 15-1419        **Caption:** Kobe v. Nikki Haley

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   ☑    this brief contains _____12,790_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑    this brief has been prepared in a proportionally spaced typeface using
   Microsoft Word 2010_____ [*identify word processing program*] in
   14 pt. Times New Roman_____ [*identify font size and type style*]; **or**

   ☐    this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) Kenneth P. Woodington

Attorney for_____Appellees Buscemi, Butkus, Chorey, Huntress, Lacy, Laurent & Waring

Dated: 11-04-2015